IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN STEPHEN BASKETT and MICHAEL ROBERT BASKETT, as co-executors of the estate of Helen Baskett, deceased, | § § § § § | |
| Plaintiffs, | § § | Case No. 3:19-cv-0001-X |
| v. | § § | |
| CAROLYN SUE RHONE and ANDREA NICOLE RHONE CHAMBERS, | § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a Motion for Default Judgment filed by Plaintiffs John Stephen Baskett and Michael Robert Baskett, co-executors of the Estate of Helen Baskett, deceased. Mot. (ECF No. 12). For the following reasons, the Court should GRANT Plaintiffs' Motion and enter a default judgment against Defendants Carolyn Sue Rhone and Andrea Nicole Rhone Chambers, consistent with these Findings, Conclusions, and Recommendation.

## Background

On January 1, 2019, Plaintiffs filed their original Complaint in this civil action alleging Defendants embezzled and converted assets belonging to the

1

decedent in violation of 18 U.S.C. § 1961 and 1962(c). Compl. 11, 20 (ECF No. 1). The Court has subject-matter jurisdiction under 28 U.S.C. § 1331; it also has personal jurisdiction over Defendants. On March 5, 2019, Plaintiffs properly served Defendant Carolyn Sue Rhone (Carolyn) with summons and a copy of Plaintiffs' Complaint. Return of Service (ECF No. 4). But despite multiple attempts, Plaintiffs were unable to personally serve Defendant Andrea Nicole Rhone Chambers (Andrea). Ex. (ECF No. 7-1). Therefore, the Court authorized Plaintiffs to serve Andrea by leaving a copy of the summons and Complaint in a waterproof envelope or wrapper, and securely attaching it to the front gate of her residence in Rockwall, Texas, and by sending a copy of the summons and Complaint through the United States Postal Service to Andrea at her residence. Order (ECF No. 8). Three months later, on June 8, 2019, Plaintiffs served Andrea in the substitute manner approved by the Court. Return of Service (ECF No. 9). The summons instructed Defendants to serve an answer to the Complaint on Plaintiffs' attorney within twenty-one days after the date of service. *Id.* The summons warned that if Defendants failed to comply, default judgment would be entered against them, entitling Plaintiffs to the relief demanded in the Complaint. *Id.* Defendants failed to comply with the summons's directives or otherwise indicate their intent to defend the action within the time required by law.

In response to Plaintiffs' request for entry of default, the Clerk entered default against Defendants on July 9, 2019. Entry of Default (ECF No. 11). When a default has been entered pursuant to Federal Rule of Civil Procedure 55(a), the factual allegations of the complaint are taken as true. *U.S. For Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citing *Au Bon Pan Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2nd Cir. 1981); *Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)). Here, the Complaint alleges that Helen J. Baskett (Helen) died on August 2, 2017, at the age of 75. Compl. 3 ¶ 9. Helen had three children: Michael Robert Baskett (Robert), John Stephen Baskett (Stephen), and Carolyn. *Id.* Andrea is Carolyn's daughter and Helen's granddaughter. *Id.* From February 2001 to April 2017, Carolyn helped Helen manage her financial affairs. *Id.* 4 ¶¶ 11-14. Helen executed a statutory durable power of attorney naming Carolyn as her attorney-in-fact and giving her power to conduct real-property and other financial transactions on Helen's behalf. *Id.* ¶ 12. Carolyn had access to Helen's bank and retirement accounts. *Id.* ¶ 11.

In April 2017, Helen and her sons noticed several unauthorized transfers from Helen's accounts and became suspicious of Carolyn. *Id.* 4-5 ¶ 13. On or about May 13, 2017, Helen removed Carolyn from her accounts and added her sons instead. *Id.* 5 ¶ 14. Two weeks later, on May 26, 2017, Helen executed a new will, naming Robert and Stephen as independent co-executors of her estate, and Robert,

Stephen, and Andrea as the sole beneficiaries of her estate. *Id.* ¶ 15. Helen did not name Carolyn as a beneficiary. *Id.* Helen's will was admitted to probate, and letters testamentary were issued to Robert and Stephen, in their capacities as the estate's co-executors, on August 28, 2017. *Id.* ¶ 16. After inventorying Helen's estate, Robert and Stephen discovered Helen's Prudential 401K retirement and bank accounts had been depleted. *Id.* ¶ 17.

Robert and Stephen traced the missing funds to Carolyn and Andrea. *Id.* 5-7 ¶¶ 18-26. They discovered Carolyn had obtained access to Helen's bank and Prudential retirement accounts; impersonated Helen; used her identification information to obtain payments from the retirement account; and transferred money from Helen's bank account. Plaintiffs also discovered that Andrea had obtained several credit cards using Helen's name and personal information, without Helen's knowledge or consent. *Id.* 7 ¶ 28. Andrea used these credit cards to make unauthorized purchases for herself, her family, and Carolyn. *Id.* ¶ 30. Andrea maintained balances near or above the credit limits, and Carolyn—without Helen's knowledge or consent—provided funds from Helen's bank accounts to make payments on the card balances. *Id.* ¶¶ 30-31. Carolyn and Andrea concealed their activities from Helen by intercepting Helen's mail and changing Helen's account preferences to provide online-only access. *Id.* 9-10 ¶¶ 36-38.

Plaintiffs contend that Defendants' conduct violates the civil RICO statute, 18 U.S.C. § 1961, and constitutes numerous violations of RICO predicate statutes, specifically 18 U.S.C. §§ 664 (embezzlement from an employee benefit plan), 1029 (fraud in connection with identification documents or access devices), 1343 (wire fraud), and 1344 (financial institution fraud). As a result of Defendants' conduct, Plaintiffs assert that Helen and her Estate suffered (a) $24,418.95 in liquidated damages for Defendants' fraudulent withdrawal and conversion of Helen's funds in the Prudential retirement account, *id.* 20-21, ¶ 50; Mot. App. Ex. 1 & 3 (ECF Nos. 12-1, 12-3); and (b) $72,700.35 in unliquidated damages for balances on the fraudulently-obtained credit card accounts and unauthorized payments and transfers from Helen's bank account. *Id.* 20-21, ¶ 50; Mot. App. Ex. 1, 2, 4(a), 4(b), 5 (ECF Nos. 12-1, 12-2, 12-4, 12-5, 12-6). Plaintiffs contend they are also entitled to $15,980.00 in attorney's fees and $870.80 in costs under 18 U.S.C. § 1964. *Id.* 21, ¶ 50; Mot. App. Ex. 7 & 8 (ECF Nos. 12-8, 12-9).

### Legal Standards and Analysis

Rule 55 governs applications for default and default judgment. Fed. R. Civ. P. 55. Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond within

the time required by the Federal Rules of Civil Procedure. *Id.* The Clerk will enter a default when the party's default is established by an affidavit or otherwise. *Id.* (citing Fed. R. Civ. P. 55(a)). After the entry of default, a plaintiff may apply to the Court for a default judgment. *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). However, it is a remedy generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (4th ed.)). To determine whether to enter default judgment, the Court should examine: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the Court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (2d ed. 1983)).

After considering Plaintiffs' Complaint, the Motion for Default Judgment, its supporting materials, and the applicable law, including the *Lindsey* factors, the Court recommends entering default judgment against Defendants. Here, there are

no material issues of fact; rather, because of Defendants' default, the Court takes as true the facts Plaintiffs allege in their Complaint. *See Nishimatsu Constr.*, 515 F.2d at 1206; *see also Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017) (Lynn, J.). Nor is there substantial prejudice against Defendants. Carolyn and Andrea were properly served; the grounds for default against both were clearly established; and the Clerk properly entered default against them. There is nothing before the Court indicating that Defendants' failure to appear was a good-faith mistake or excusable neglect. Entering default judgment against Defendants, who have taken no action to respond to this action, is not "harsh." *See Lindsey*, 161 F.3d at 893. Defendants Carolyn and Andrea have had almost a year to respond to Plaintiffs' Complaint, and over four months to respond to Plaintiffs' Motion for Default Judgment, which mitigates the harshness of a default judgment. *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.).

    The pleadings also sufficiently support a default judgment, and damages can be calculated with reasonable certainty without a hearing. As set forth in Plaintiffs' Complaint, Motion for Default Judgment, and uncontroverted supporting materials, Defendants formed a non-legal "association-in-fact" enterprise with an organizational structure that divided the responsibilities between them. Compl. 11

¶ 44. Both Defendants participated in the enterprise by engaging in predicate violations to work together to implement their fraudulent schemes. *Id.* Carolyn obtained access to Helen's bank and Prudential retirement accounts, impersonated Helen, and used her identification information to obtain payments from Helen's retirement account and transfer money from Helen's bank account. *Id.* Carolyn intercepted Helen's mail and set her accounts to online-only access, to prevent Helen from discovering the violations. *Id.* Andrea endorsed the checks Carolyn requested from Helen's retirement account and cashed or deposited them into her own account. *Id.* Andrea also used Helen's name and personal information to fraudulently open credit card accounts on which she would make purchases for her own and Carolyn's use. *Id.* Carolyn transferred money from Helen's bank account to pay for the balances Andrea accrued on these credit cards. *Id.* Defendants affected interstate commerce by making fraudulent misrepresentations to banks, creditors, and other financial institutions with nationwide operations, using telephones, the mail, or the Internet. *Id.* 12 ¶ 46. Defendants' actions constitute numerous violations of RICO predicate statutes listed in 18 U.S.C. § 1961(1)(b), specifically 18 U.S.C. §§ 664, 1029, 1343, and 1344.

Generally, in the default-judgment context, unliquidated damages are not awarded without an evidentiary hearing. Fed. R. Civ. P. 55(b)(2)(B); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). However, the Rules do not require an

evidentiary hearing, and the Court has broad discretion to forego an evidentiary hearing where there is sufficient evidence to render a decision without a hearing. *See James*, 6 F.3d at 310; *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam) (citations omitted) (holding that in the default judgment context, damages may "be entered without a hearing" if "the amount claimed is a liquidated sum or one capable of mathematical calculation"). Here, Plaintiffs' damages are mathematically calculable from the evidence submitted with their Motion. Plaintiffs have established that Helen and her Estate are entitled to recover $24,418.95 in liquidated damages for Defendants' fraudulent withdrawal and conversion of Helen's funds in the Prudential retirement account, and $72,700.35 in unliquidated damages for balances on the fraudulently-obtained credit card accounts and unauthorized payments and transfers from Helen's bank account to Carolyn's bank account. Compl. 20-21, ¶ 50; Mot. App. Ex. 1, 2, 3, 4(a), 4(b), & 5.

Plaintiffs are also entitled to $15,580.00 in attorney's fees and $870.80 in costs under 18 U.S.C. § 1964. *Id.* 21¶ 50; Mot. App. Ex. 7 & 8. Determining a fee award is a two-step process: first, the Court calculates the "lodestar," which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work, excluding all time that is excessive, duplicative, or inadequately documented. *Jimenez v. Wood Cty.*, 621 F.3d 372,

9

379-80 (5th Cir. 2010)[1] (citing *Rutherford v. Harris Cty.*, 197 F.3d 173, 192 (5th Cir. 1999) (Fitzwater, J.)). Second, once the lodestar amount is calculated, the Court may adjust it based on the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989)[2]. The Court accepts counsel's determination of the lodestar as reasonable, given the description of the time spent on the case and the rates charged considering counsel's experience. The Court sees no reason to adjust this figure. Because the Court did not hold a hearing on Plaintiff's Motion, the Court declines to award $400.00, which counsel anticipated would be required for two hours of work to prepare for and attend the hearing. Mot. App. Ex. 6.

The Court also finds neither Defendant is an infant, incompetent, or entitled to relief under the Servicemembers Civil Relief Act. *See* 50 U.S.C. § 3901 (formerly cited as 50 App. U.S.C. § 501); Mot. App. Ex. 12 (ECF No. 12-13). Therefore, the Court RECOMMENDS the District Court GRANT Plaintiffs' Motion and enter

---

[1] Part V of *Jimenez*, 621 F.3d at 379–80, which discussed the Fifth Circuit's method for calculating attorney's fees was reinstated on rehearing en banc. *See Jimenez v. Wood Cty.*, 660 F.3d 841, 844 n. 1 (5th Cir. 2011).

[2] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 448 F.2d at 717-19.

default judgment against Defendants consistent with these Findings, Conclusions, and Recommendation.

**SO RECOMMENDED.**

December 9, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).